[Cite as *State v. Griffin*, 2013-Ohio-3309.]

**IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 12CA3484 |
| v. | : | |
| | : | DECISION AND |
| MALCOLM R. GRIFFIN, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 07/19/2013 |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor and Shane Tieman, Assistant Prosecuting Attorney, for Appellee.

Hoover, J.

{¶ 1} This is an appeal of a conviction from the Scioto County Court of Common Pleas. On March 13, 2012, a jury convicted appellant Malcolm Griffin of 1) Trafficking in Drugs Within the Vicinity of a Juvenile, a first degree felony, in violation of R.C. 2925.03(A)(2)/(C)(4)(F)(E); 2) Possession of Crack Cocaine, a first degree felony, in violation of R.C. 2925.11(A)/(C)(4)(E); and 3) Operation While Under the Influence of Alcohol or Drug Abuse, a first degree misdemeanor, pursuant to R.C. 4511.19(A)(1)/(b)(3). The trial court also found him guilty on a count of Display of License Plates and Validation Stickers, a minor misdemeanor pursuant to R.C. 4503.21. Appellant was sentenced to a total of four (4) years in prison and fines of $325.00. For the following reasons, we affirm appellant's convictions.

{¶ 2} Appellant sets forth one assignment of error:

THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE

EVIDENCE AS WELL AS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE.

I.

STATEMENT OF THE CASE

{¶ 3}  On December 23, 2011, Lee Barrow traveled to Columbus, Ohio in order

to acquire drugs.  Barrow was traveling with juvenile Gregory Henderson.  According to

Barrow, the two were stranded in Columbus after their ride left them.  Barrow called his

longtime friend, appellant, Malcolm Griffin.  Appellant agreed to give him a ride back to

their hometown of Williamson, West Virginia.  Appellant planned on going to Charleston,

West Virginia first to pick up his mom and little sister, before continuing to Williamson.

{¶ 4}  While the three were loading the car, Barrow carried out a new black jacket.

They left after 11:00 p.m.; and Griffin stopped to put some gas in the car.  During this

stop, Barrow testified that he placed about an ounce of crack cocaine, contained in a

plastic bag, inside a can of hair gel.  He then placed that container inside a pocket of the

black jacket.  After the stop, appellant drove south on U.S. 23.

{¶ 5}  In the early morning hours of December 24, 2013, Ohio State Highway

Trooper Ted Neal and Sargent Jeremy Schuldt were working the midnight shift on U.S.

23 near Lucasville, Ohio.  At 2:25 a.m. Trooper Neal noticed a vehicle driving south on

U.S. 23 without a front license plate.  In addition, the rear license tag light of the vehicle

was not functioning.  Sargent Schuldt was driving the police cruiser and began to follow

the vehicle.  When the vehicle pulled in a closed business, the officers activated the

overhead lights and pulled over the vehicle.  Trooper Neal approached the vehicle to

obtain basic information. The driver of the vehicle was appellant Malcolm Griffin. Trooper Neal then went back to his vehicle.

{¶ 6} On his second approach to the vehicle, Trooper Neal smelled alcohol on Griffin. After having obtained appellant's basic information, Trooper Neal knew that appellant was only twenty years old. Trooper Neal asked appellant to step out of the vehicle. Next, Trooper Neal performed the HGN test, evaluating appellant's eyes. Trooper Neal observed four of the six indicators. Appellant then took a preliminary breath test which confirmed Trooper Neal's suspicions. At this time, appellant was placed under arrest for suspicion of OVI.

{¶ 7} Meanwhile, Sargent Schuldt monitored the passengers in the vehicle. Gregory Henderson occupied the front passenger seat; Lee Barrow sat in the backseat. Sargent Schuldt described Barrow as "basically pretending as though he was still asleep." Sargent Schuldt began talking to Henderson and noticed marijuana residue in the creases of his shirt and pants. Sargent Schuldt asked Henderson to step out of the car, and while he did Sargent Schuldt noticed Henderson make a flipping motion with his hand towards the back of the vehicle. A second glance inside the car revealed a bag of marijuana in the middle of the car's floor.

{¶ 8} The discovery of marijuana, prompted the officers to perform a complete search of the vehicle. A new black jacket, with the tags still on it, caught the attention of Sargent Schuldt. In response to an inquiry regarding ownership of the jacket, appellant said it belonged to him. A search of the jacket yielded the hair gel container which contained the 23.86 grams of cocaine-based crack. Appellant was taken to the patrol post,

where he recorded a .044 BAC after taking a breath test.  He was then taken to the Scioto County Jail.

{¶ 9}  Appellant was indicted on five counts:

Count One: Trafficking in Drugs Within the Vicinity of a Juvenile, a first degree felony, in violation of R.C. 29.25.03(A)(2)

Count Two: Possession of Crack Cocaine, a first degree felony, in violation of R.C. 2925.11(A)

Count Three: Operation While Under the Influence of Alcohol, a first degree misdemeanor, in violation of R.C. 4511.19(A)

Count Four: Possession of Marijuana, a minor misdemeanor, in violation of R.C. 2925.11(A)

Count Five: Display of License Plates, a minor misdemeanor, in violation of R.C. 4503.21.

{¶ 10}  At trial, the State presented five witnesses in their case in chief: Trooper Ted Neal, Heather Sheskey, Captain David Hall, Sargent Jeremy Schuldt and Detective Joshua Justice.  Appellant presented Lee Barrow and himself as witnesses in his own defense.  The State introduced phone calls made by appellant and Barrow while in jail. This conversation took place between appellant and his uncle Terry:

MR. GRIFFIN: I'm in jail, man.

TERRY: For what? For what?

MR. GRIFFIN: For trafficking and DUI, man, I need some help.

…

TERRY: Oh, what's the charge?

MR. GRIFFIN: Drug possession, trafficking, and DUI.

TERRY: What'd you have possession of what?

MR. GRIFFIN: Some cocaine.

TERRY: Wow. You and who?

MR. GRIFFIN: Me, Lee, and Gregory.

The prosecutor argued in closing arguments that this was an admission of guilt, while appellant claimed that he was merely explaining the charges when he stated "Some cocaine."

{¶ 11}  In another phone call, appellant talked with a girl and stated the following:

I can't have my boy [Barrow] in here looking all depressed.  Everybody asking him what's going on, what s wrong with him.  I know he needs money on his books, I'm saying, but I'm the same way.  Me and him in the same boat. I'm carrying his load and my load, when he's supposed to be carrying my load.  You dig what I'm saying?

According to appellant, the conversation meant that Barrow did not have any money on his books; therefore, appellant had to help him out.

{¶ 12}  Approximately a week before trial, Barrow wrote a letter to the trial court taking full responsibility for possession of the drugs.  The letter stated that appellant and Henderson had no knowledge that drugs were in the vehicle.  On cross-examination, the State questioned Barrow about a phone call to his father, in which Barrow claimed the charges were baseless.  The State also questioned him about a phone call to his mother where he suggested the minor Henderson take sole responsibility for the charges to clear

appellant and himself.  During his testimony Barrow insisted Henderson and appellant

had no knowledge of the cocaine-based crack found in the black jacket.

{¶ 13}  On March 16, 2012, a jury found appellant guilty of counts one, two,

three, and five.  The State voluntarily dismissed count four.  The trial court merged

counts one and two as allied offenses; and appellant was sentenced to four years in prison.

Appellant was ordered to pay a fine of $300.00 on count three and a fine of $25.00 for

count five.  Appellant filed his notice of appeal on April 12, 2012.

II.

ASSIGNMENT OF ERROR

{¶ 14}  In his sole assignment of error, appellant argues that the evidence was

insufficient to support the conviction.  In the alternative, he states that even if the verdict

is supported by sufficient evidence, the conviction is against the manifest weight of the

evidence.

A. Standard of Review

{¶ 15}  The arguments concerning the "sufficiency" and the "manifest weight" of

the evidence are two distinct legal concepts.  *State v. Davis*, 4th Dist. No. 12CA3336,

2013-Ohio-1504, ¶ 12; *See State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541

(1997).  "When reviewing the sufficiency of the evidence, our inquiry focuses primarily

upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably

could support a finding of guilt beyond a reasonable doubt.  [*Thompkins*] at 386 (stating

that 'sufficiency is a test of adequacy')."  *Davis* at ¶ 12, citing *Thompkins* and *State v.*

*Jenks,* 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991).  "The standard of review is

whether, after viewing the probative evidence and inferences reasonably drawn therefrom

in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jenks,* 61 Ohio St.3d at 273.

{¶ 16} Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *See State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 17} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St .2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. No. 07CA2953, 2008–Ohio–1744, ¶ 31. "The trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Pippen*, 4th Dist. No.

11CA342, 2012-Ohio-4692 ¶ 31 quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 18}  Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the jury, when resolving the conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19}  If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.  *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins,* 78 Ohio St.3d at 387, quoting *Martin,* 20 Ohio App.3d at 175; *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

### B. Legal Analysis

### 1. Trafficking in Drugs Within the Vicinity of a Juvenile/

### Possession of Crack Cocaine

{¶ 20} Appellant's arguments address the issue of whether the appellant could be found to be in constructive possession of the cocaine-based crack.   Appellant does not contend that the trial court committed error with respect to the OVI conviction. Therefore, we will address only the Trafficking and Possession counts.

{¶ 21} Appellant was found guilty of Count One: Trafficking in Drugs Within the Vicinity of a Juvenile, a first degree felony. R.C. 2925.03 states:

(A) No person shall knowingly do any of the following:

\*\*\*

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

\*\*\*

(C) Whoever violates division (A) of this section is guilty of one of the following:

\*\*\*

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

\*\*\*

(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds twenty grams but is less than twenty-seven grams of cocaine, trafficking in cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the

drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

(f) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

{¶ 22} The jury also found appellant guilty of Possession of Drugs, a second degree felony. R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶ 23} Appellant argues that he had neither actual nor constructive possession of the crack cocaine. "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession." *State v. Fry*, 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶ 39, citing *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, and *State v. Wolery,* 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶ 24} For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." *State v. Harrington,* 4th Dist. No. 05CA3038, 2006-Ohio-4388 ¶ 15 quoting *Hankerson,* 70 Ohio St.2d at 91, 434 N.E.2d 1362. Dominion and control, as well as whether a person had conscious presence of an item of contraband, may be established by circumstantial evidence. *Id*; *see also State v. Jenks,* 61 Ohio St.3d 259, 272-73, 574 N.E.2d 492 (1991).

{¶ 25} R.C. 2925.01(K) states: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "That is, 'a defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession. However, a defendant's proximity to drugs may constitute some evidence of constructive possession. Mere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.'" *Pippen,* 4th Dist. No. 11CA342, 2012-Ohio-4692 ¶ 40 quoting *State v. Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, at *5.

{¶ 26} The main issue herein is whether appellant was in constructive possession of the cocaine-based crack. In this case, the cocaine-based crack was found in appellant's jacket, in the back of his vehicle. After a review of the entire record and all the evidence, we find the verdict is supported by sufficient evidence.

{¶ 27} The State presented mostly circumstantial evidence to prove their case that appellant had knowledge of the cocaine-based crack. The State introduced the phone calls made by Barrow and appellant while in jail. The State demonstrated inconsistencies

in Barrow's statements, and called into question appellant's motives. The State argued that the letter, written by Barrow, claiming that he [Barrow] was responsible for possession the cocaine actually sounded like appellant's words, not the words of Barrow.

{¶ 28} Much of the evidence presented against appellant can be open to interpretation, resolvable only by the finders of fact—in this case, the jury. One example of such evidence presented was appellant's conversation with his uncle Terry where the uncle asked, "What'd you have possession of what?" In response, appellant answered, "[s]ome cocaine." The jury convicted the appellant of the possession of the crack cocaine; therefore, the jury apparently interpreted that conversation to mean that appellant knew about the cocaine being in the vehicle.

{¶ 29} It seems that the inconsistences in Barrow's phone conversations and his testimony also caused the jury to resolve the issues of fact against the appellant. Barrow's phone conversations show that at one time he claimed the charges were baseless, whereas another time he sought to have a juvenile "take the rap" for both appellant and himself. At trial, Barrow testified that he was the sole person responsible for possessing the cocaine.

{¶ 30} After examination of the evidence, the verdict reached by the jury is supported by sufficient evidence. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. We now turn to examine whether the verdict is against the manifest weight of the evidence.

{¶ 31} When reviewing a claim challenging the manifest weight of the evidence, the appellate court "sits as a thirteenth juror" and assesses whether it disagrees with the

factfinder's resolution of the conflicting testimony.  *Thompkins*, 78 Ohio St.3d at 387.

The standard of review requires us to find this to be an "exceptional case in which the

evidence weighs heavily against the conviction" in order to overturn appellant's

conviction.  *Id*.  In light of the evidence presented in this case, we cannot conclude that

this is an exceptional case.  The conviction is not against the manifest weight of the

evidence.  Therefore appellant's sole assignment of error is not well taken.

III.

CONCLUSION

{¶ 32}  We find appellant's sole assignment of error is without merit; and

accordingly we affirm his convictions.  The jury verdicts in this case were supported by

sufficient evidence and were not against the manifest weight of the evidence.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court

By:_____
Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.